# EXHBIT A

# EXHBIT A

STATE OF ARIZONA
DEPT. OF INSURANCE

SEP 1 2 2012

TIME 3:40 pm

SERVICE OF PROCESS

1  Edward O. Comitz, #015006
   ecomitz@cobelaw.com
2  Patrick T. Stanley, #023835
   pstanley@cobelaw.com
3  **Comitz | Beethe**
   Scottsdale Spectrum
4  6720 N. Scottsdale Road, Suite 150
   Scottsdale, AZ 85253
5  Telephone 480.998.7800
   Fax: 480.219.5599
6
7  Attorneys for Plaintiff

8          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9              **IN AND FOR THE COUNTY OF MARICOPA**

10

11  MARY M. MURPHY, individually and as       )   No.   CV2012-054951
    conservator for her minor children, W.M. and )
12  L.M.                                         )
                                                 )   **SUMMONS**
13              Plaintiff,                       )
                                                 )
14  vs.                                          )
                                                 )
15  FARMERS NEW WORLD LIFE INSURANCE )     If you would like legal advice from a lawyer,
    COMPANY, a Washington corporation;       )       contact the Lawyer Referral Service at
16                                            )               602-257-4434
              Defendant.                      )                    or
17                                            )          www.maricopalawyers.org
                                              )              Sponsored by the
18  _____ )      Maricopa County Bar Association

19          **THE STATE OF ARIZONA TO THE DEFENDANT:**

20          **FARMERS NEW WORLD LIFE INSURANCE COMPANY,**
            **a Washington corporation**
21

22          YOU ARE HEREBY SUMMONED and required to appear and defend, within the time
    applicable, in this action in this Court. If served within Arizona, you shall appear and defend within
23  20 days after the service of the Summons and Complaint upon you, exclusive of the day of service.
    If served out of the State of Arizona -- whether by direct service, by registered or certified mail, or
24  by publication -- you shall appear and defend within 30 days after the service of the Summons and
    Complaint upon you is complete, exclusive of the day of service. Where process is served upon the
25  Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it
    in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days
26  after date of such service upon the Director. Service by registered or certified mail without the State
    of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the
27  Court. Service by publication is complete 30 days after your receipt of that mail with no default to
    be had on such service until the filing of an affidavit of service with the Court. Direct service is
28  complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days

after filing the Affidavit of Compliance and return receipt or Officer's Return.  Arizona Rules of Civil Procedure, Rule  4; A.R.S. § 20-222.

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the plaintiff's attorney. Arizona Rules of Civil Procedure, Rule 10(d); A.R.S. §Section 12-311; Arizona Rules of Civil Procedure, Rule 5.

Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least 3 judicial days in advance of a scheduled court proceeding.

The name and address of Plaintiff's attorneys is:

> Edward O. Comitz
> Patrick T. Stanley
> COMITZ | BEETHE
> 6720 N. Scottsdale Rd., Suite 150
> Scottsdale, Arizona 85253
> (480) 998-7800

COPY

SEP 12 2012

SIGNED AND SEALED this date: _____

MICHAEL K. JEANES, CLERK

CLERK OF THE SUPERIOR COURT

By_____
    Deputy Clerk

COPY

SEP 12 2012

MICHAEL K. JEANES, CLERK
K. KEE
DEPUTY CLERK

1  Edward O. Comitz, #015006
   ecomitz@cobelaw.com
2  Patrick T. Stanley, #023835
   pstanley@cobelaw.com
3  **Comitz | Beethe**
   Scottsdale Spectrum
4  6720 N. Scottsdale Road, Suite 150
   Scottsdale, AZ 85253
5  Telephone 480.998.7800
   Fax: 480.219.5599
6
7  Attorneys for Plaintiff

8          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9            **IN AND FOR THE COUNTY OF MARICOPA**

10

11 MARY M. MURPHY, individually and as
   conservator for her minor children, W.M. and    No.    CV2012-054951
12 L.M.

13          Plaintiff,                              **COMPLAINT**

14 vs.                                             (Jury Trial Demanded)

15 FARMERS NEW WORLD LIFE INSURANCE
   COMPANY, a Washington corporation;
16
            Defendant.
17

18 _____

19      For her Complaint, Plaintiff, Mary M. Murphy, by and through undersigned counsel, hereby

20 alleges as follows:

21                  **PARTIES, JURISDICTION AND VENUE**

22      1.      Plaintiff Mary M. Murphy ("Mary") is a single resident of Maricopa County, Arizona.

23      2.      Mary has two minor children, W.M. and L.M., with her late husband, Richard Murphy

24 ("Richard").

25      3.      Mary has been appointed as the conservator for W.M. and L.M. for purposes of

26 pursuing this action.

27      4.      At all relevant times prior to his death, Richard was a senior vice president of

28 brokerage for CB Richard Ellis.

5.      Defendant Farmers New World Life Insurance Company ("Farmers") is a corporation organized under the laws of the state of Washington. Farmers transacts business throughout the United States, including in Maricopa County, Arizona.

6.      Farmers has caused acts and/or events to occur in Maricopa County, Arizona out of which this Complaint arises.

7.      This Court has jurisdiction over the dispute pursuant to A.R.S. § 12-123.

8.      Venue is proper in this Court under A.R.S. § 12-401.

## GENERAL ALLEGATIONS

### I.    Richard Murphy's Insurance Policies

9.      Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 8 above as though fully set forth herein.

10.     Farmers insured the life of Richard through two term life insurance policies, identified by policy numbers 006410272 and 006628178 ("Policies").

11.     Policy number 006410272, in the amount of $500,000 was issued on or about November 16, 1999.

12.     Policy number 006628178, in the amount of $250,000 was issued at some point prior to 2005.

13.     Plaintiff and her minor children are the beneficiaries under the Policies.

14.     The Policies were issued through Farmers' agent, Brian Tyler ("Tyler").

15.     Tyler is an insurance agent licensed by the state of Arizona, and exclusively sells insurance for Farmers and its affiliated companies.

16.     Tyler also assisted Mary and Richard (collectively, the "Murphys") with their other insurance needs.

17.     Farmers and/or its affiliated companies have, at all relevant times, provided auto and homeowners' insurance policies to the Murphys.

### II.    Farmers Claims the Policies Lapse

18.     Prior to 2009, the Murphys resided at 4620 E. Exeter Boulevard, Phoenix, Arizona 85018 ("Exeter address").

2

19.    The Murphys timely paid all premiums on all of their insurance, including the Policies, while living at the Exeter address.

20.    In December 2009, the Murphys moved to 120 E. Marlette Avenue, Phoenix, Arizona 85012 ("Marlette address").

21.    The Murphys called Tyler's office and told them about the change in address.

22.    All premium notices for all insurance provided by Farmers, including the Policies, were thereafter sent to the Marlette address.

23.    The Murphys continued to timely pay all premiums on all of their insurance, including the Policies, while living at the Marlette address.

24.    On December 20, 2010, the Murphys purchased a house at 5017 E. Tierra Buena Lane, Scottsdale, Arizona 85254 ("Tierra Buena address").

25.    The Murphys moved to the Tierra Buena address in January 2011.

26.    Shortly thereafter, Mary called Tyler's office to notify him of the change in address.

27.    By notifying Tyler, Mary notified Farmers of the change in address.

28.    Farmers received actual notice of the change in address because immediately thereafter, Farmers began sending the auto insurance premium notices and the homeowners insurance statements to the Tierra Buena address.

29.    However, Farmers continued sending premium notices for the Policies to the Marlette address.

30.    The premium notices for the Policies were not forwarded to the Murphys at the Tierra Buena address.

31.    As a result, Farmers claimed that the premiums for the Policies were not paid in early 2011.

32.    Farmers never notified the Murphys that the premiums for the Policies were overdue.

33.    The Policies have a provision stating that they allow a grace period of 31 days following the due date of each premium, during which the Policies will continue to remain in force.

34.    Farmers and its agents, including Tyler, undertake the obligation to call their insureds whenever their policy premiums are overdue and they enter the grace period.

3

35.     For example, on April 10 and April 13, 2012, Farmers notified Tyler, who in turn notified Mary, that the premium for her auto insurance was overdue and that it needed to be paid or else it would lapse.

36.     Mary promptly paid the premium and the auto insurance did not lapse.

37.     However, Tyler never notified the Murphys that the premiums on the Policies were overdue during the grace period, or warned them that the Policies would lapse.

38.     In 2012, Tyler advised Mary that Farmers never told him that the premiums for the Policies were overdue, or that they were in danger of lapsing.

39.     Instead, Tyler advised Mary that Farmers' district manager received a notice that premiums for the Policies were overdue.

40.     Tyler told Mary that he should have been copied on the notice, but was not.

41.     Tyler further expressed his shock to Mary that notice of the potential lapse in coverage was not sent to Richard by certified mail.

42.     As a result of Farmers not sending the premiums to the correct address or notifying the Murphys that the premiums were overdue, Farmers claims the Policies lapsed at some point in 2011.

43.     The Policies have a provision allowing for reinstatement of lapsed policies within six months of the lapse.

44.     At some point in June 2011, Tyler and Richard discovered that the Policies had allegedly lapsed for non-payment of premiums.

45.     Tyler faxed Richard a "Policy Change/Reinstatement Application" ("Reinstatement Application").

III.    **The Reinstatement Application**

46.     The Reinstatement Application contained a list of questions about Richard's health.

47.     Pursuant to the Policies and Arizona law, all statements in the Reinstatement application are considered to be representations, and not warranties.

48.     The Reinstatement Application is substantially more extensive than the original application for insurance benefits.

49.   The questions on the Reinstatement Application are written in a very small font, and are difficult to read, given the size of the text and the poor quality of the version sent to Richard.

50.   The questions on the Reinstatement Application contain lengthy recitations of largely unrelated medical conditions, and ask whether the applicant has ever been treated for any of the conditions.

51.   Among a number of other questions, the Reinstatement Application asks whether Richard had ever "consulted a Physician or other Health Care Provider, or been treated, hospitalized, or taken medication for cerebral palsy or any congenital or birth disorder, cancer, tumor, mass or any malignant growth, asthma or other respiratory disease or disorder, heart murmur or other heart disorder, seizures or other neurological disorder, diabetes, hepatitis, anemia, or any digestive, kidney or urinary disease or disorder?  (*Indiana and Oregon residents only* during the past 10 years)."

52.   Farmers' Reinstatement Application also included a question asking whether Richard had ever "consulted a Physician or other Health Care Provider, or been treated, hospitalized, or taken medication for chest pain of any cause, high blood pressure, high cholesterol, heart attack, stroke, or other disorder of the brain or blood vessels, sleep apnea, emphysema, liver disease or disorder, memory and Alzheimer's Disease, multiple sclerosis, depression, or attempted suicide? (*Indiana and Oregon residents only* during the past 10 years)."

53.   Although the terms "Physician" and "Health Care Provider" are capitalized, they are not defined anywhere on the Reinstatement Application.

54.   The Reinstatement Application does not ask whether Richard was ever treated for anxiety or an anxiety disorder.

55.   Richard checked all of the boxes "No" and submitted it to Farmers as quickly as he could in order to preserve his life insurance benefits.

56.   Farmers claims the Policies were reinstated on July 13, 2011.

## IV.   Richard's Death

57.   In late October 2011, four months *after* he completed the Reinstatement Application, Richard began experiencing significant psychological problems.

58.   On October 18, 2011, he began treating with a therapist, Barbara O'Brien.

5

59.    Richard reported to Ms. O'Brien that he was depressed because of marital and financial issues, that he had no prior episodes of depression, and that the episode he was experiencing had been lasting between 8 and 12 weeks.

60.    On October 22, 2011, Richard was admitted to Banner Good Samaritan Hospital's ("Banner") inpatient psychiatric facility after having thoughts of suicidal ideation that had developed within the week prior to his admission.

61.    Richard reported to the doctors at Banner that he went to the emergency room because of "anxiety and daily worry."

62.    Richard reported that he had been experiencing "about 1-1/2 years of worry" about his marital and financial situation and that his past psychiatric history consisted only of "some outpatient marital counseling."

63.    He reported to Banner that he had "never had a psychiatrist before."

64.    His statements to Ms. O'Brien and the doctors at Banner were consistent with what Richard reported on his Reinstatement Application.

65.    They are also consistent with adjustment disorder, the inability to adjust to outside stressors, like marital or financial stressors, rather than clinical depression.

66.    Other than four visits to his children's psychiatrist, Dr. David Friedman, in late 2010 Richard had never seen a psychiatrist or a psychologist.

67.    Richard had previously seen marital counselors, who were not licensed psychologists or any kind of health care providers, and whose focus was to address marital issues between Mary and Richard.

68.    Although Dr. Friedman arrived at a "working diagnosis" that included depression in addition to Richard's anxiety disorder and possible attention deficit/hyperactivity disorder, he did not prescribe Richard any medication. Dr. Friedman did not communicate his "working diagnosis" to Richard's primary care provider, nor is there any evidence he communicated the diagnosis to Richard.

69.    As reflected in his statements to Banner, Richard did not consider Dr. Friedman to be treating him at all, let alone for major depressive disorder.

6

70.    In fact, throughout 2010 and 2011, Richard continued to treat with his primary care physician, Jeffrey Nebelsieck, for what is reflected in Dr. Nebelsieck's notes as anxiety.

71.    Dr. Nebelsieck's records contain no mention of depression, and there is no evidence that Richard was ever told that anyone had diagnosed him with a depressive disorder.

72.    Richard was treated at Banner for three days, and then released on October 25, 2011.

73.    Richard passed away on November 1, 2011.

74.    Following Richard's death, Mary submitted a claim for the proceeds of the Policies.

## V.    Farmers' Bad Faith Post-Claim Underwriting

75.    Farmers has an incentive to collect premiums on level-term life insurance policies for years, while its insureds are younger and have a much lower mortality risk, and then to look for ways to terminate the policies or, at a minimum, to restart the contestability period, as its insureds age and their mortality risk increases.

76.    For instance, according to the Period Life Table published by the Social Security Administration, an individual who is 48 years old (Richard's age when he died) is more than three times more likely to die in any given year than an individual who is 32 years old (Richard's age when he purchased the first of the Policies) and more than two and a half times as likely to die in any given year than an individual who is 37 years old (Richard's age when he purchased the second of the Policies).

77.    One way Farmers can accomplish this is through deliberately not notifying insureds of missed premium payments later in the policy term, thereby causing older policies to lapse.

78.    In the event the insured discovers the lapse during the reinstatement period, Farmers then requires its insured to complete a far more comprehensive questionnaire about his health than it required for the issuance of the policy originally, printed in small print, with medical conditions buried in lists full of unrelated conditions, and filled with ambiguous statements and undefined terms.

79.    Then, if the insured dies during the new contestability period, Farmers engages in bad faith post-claim underwriting, scouring a claimant's medical history looking for alleged

1   misrepresentations or omissions on which it can deny paying benefits after collecting years of
2   premiums.

3       80.     Farmers engaged in this practice in Richard's case by disregarding actual notice of the
4   Murphys' change of address, failing to notify the Murphys that a premium payment had been missed
5   prior to the expiration of the grace period, and requiring Richard to submit a reinstatement
6   application.

7       81.     Then, from the time it was notified of Richard's death, Farmers began looking for
8   ways to avoid paying the benefit.

9       82.     At Richard's funeral, Mary was approached by Tyler, who criticized Richard for not
10   purchasing life insurance through his employer, and assured her that the Policies would pay out.

11      83.     Farmers then spent more than six months "investigating" Richard's claim, looking for
12   a basis on which to deny his claim.

13      84.     Throughout Farmers' investigation, Tyler assured Mary that Richard's death would
14   be covered under the Policies, and that the investigation was a normal part of the claims process.

15      85.     During this time period, Mary complied with every request for information made by
16   Farmers and talked with its investigator, Patrick Goodrich, on a number of occasions.

17      86.     Farmers denied Mary's claims under the Policies on May 18, 2012, alleging that
18   Richard omitted material information about his psychological history on the Reinstatement
19   Application.

20      87.     Farmers claims that, had it known of Richard's "undisclosed history of Major
21   Depressive Disorder" it would have declined to reinstate the Policies.

22      88.     Farmers voided the Policies, even though its own actions in failing to send the
23   premium notices to the correct address caused the alleged lapse, and even though it has not and
24   cannot establish that Richard made a fraudulent representation, that he knew that any representations
25   on the Reinstatement Application were false, or that it would have declined to issue the policies had
26   Richard completed the Reinstatement Application differently.

27      89.     Farmers took Richard's treatment for anxiety disorder, a "working diagnosis" of
28   depression from a psychiatrist who was primarily treating Richard's children, and some notes from

8

a marital therapist who was neither a psychologist nor a psychiatrist, none of which reflect that Richard was ever told he had a depressive disorder, and then made a leap of logic to draw from those sources that Richard knew he was suffering from major depressive disorder and lied on his Reinstatement Application.

90.     Farmers drew this conclusion to enrich itself at Mary's expense, despite its obligations of good faith and fair dealing under Arizona law and its duty to give equal consideration to the Murphys' interests.

## COUNT ONE

### (Breach of Contract)

91.     Mary realleges and incorporates Paragraphs 1 through 90 as if fully set forth herein.

92.     Farmers issued the Policies.

93.     The Policies provide that if Richard died while they were in force, Farmers would pay the proceeds to the beneficiaries of the Policies.

94.     Mary, L.M. and W.M. are the beneficiaries and successor owners under the Policies.

95.     The Murphys have performed all conditions, covenants and promises required to be performed on their part under the terms of the Policy.

96.     The actions of Farmers, as described herein, constitute a material breach of the Policies, which has caused damages to Mary, individually and as the conservator for L.M. and W.M. in an amount to be proven at trial.

97.     Mary is entitled to an award of attorneys' fees pursuant to A.R.S. § 12-341.01 as this action arises out of contract.

WHEREFORE, Mary requests that the Court enter judgment against Farmers as follows:

A.      For compensatory damages in an amount to be proven at trial;

B.      For consequential damages in an amount to proven at trial;

C.      For an award of attorneys' fees;

D.      For an award of costs;

E.      For an award of pre- and post-judgment interest on any amounts ordered to be paid by Farmers; and

F.     For such other and further relief as the Court deems just and proper.

## COUNT TWO

### (Negligence)

98.    Mary realleges and incorporates Paragraphs 1 through 97 as if fully set forth herein.

99.    Farmers undertook a duty to notify its insureds, including the Murphys, if premiums are not timely paid on their policies.

100.   Farmers recognizes this as necessary for the protection of its insureds in maintaining their insurance coverage.

101.   Farmers failed to exercise reasonable care in fulfilling this duty to the Murphys.

102.   The Murphys relied on Farmers providing them notice of any overdue premiums.

103.   Farmers' failure to exercise reasonable care in fulfilling this duty to the Murphys increased the risk of harm to them, as described above.

104.   As a result of Farmers' failure to exercise reasonable care, Mary has been damaged in an amount to be proven at trial.

WHEREFORE, Mary requests that the Court enter judgment against Farmers as follows:

A.     For compensatory damages in an amount to be proven at trial;

B.     For an award of costs;

E.     For an award of pre- and post-judgment interest on any amounts ordered to be paid by Farmers; and

F.     For such other and further relief as the Court deems just and proper.

## COUNT THREE

### (Insurance Bad Faith)

105.   Mary realleges and incorporates Paragraphs 1 through 104 as if fully set forth herein.

106.   As an insurer, Farmers owes Mary a number of duties under the Policy and the law, including but not limited to, duties of continuing good faith and reasonableness in the investigation, evaluation and processing of his claim.

107.   Farmers also has an affirmative duty to treat Mary fairly and honestly, and to refrain from conduct used to gain an unfair financial advantage, among other things.

108.    Farmers' refusal to send premium notices to the correct address, its "reinstatement" process, its subsequent post-claim underwriting, and its denial of Mary's claim, among other things, were unreasonable and done in bad faith, and the evidence reflects that Farmers placed its own interests ahead of Mary's.

109.    Farmers knew and/or was conscious of the fact that its conduct, described herein, was unreasonable.

110.    Farmers' breaches of its duties to Mary have actually and proximately caused and continue to cause damages in an amount to be proven at trial.

111.    These include damages related to the emotional distress Farmers' actions have caused her through the financial and psychological impact of having the claim process drawn out for more than six months and being told at the end of it that she is not entitled to the financial security and peace of mind she and her husband thought they were getting when they purchased the Policies.

112.    Farmers acted to serve its own interests, having reason to know and consciously disregarding the substantial risk that its conduct might significantly injure Mary, and/or Farmers consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Mary, thereby entitling her to an award of punitive damages.

WHEREFORE, Mary requests that the Court enter judgment against Farmers as follows:

A.    For an award of compensatory damages in an amount to be proven at trial;

B.    For an award of special damages, including emotional distress damages, in an amount to be proven at trial;

C.    For an award of punitive damages;

D.    For an award of attorneys' fees, costs and expenses incurred herein; and

E.    For such other relief as the Court deems just and proper.

/ / /

/ / /

/ / /

1

DATED this 12th day of September, 2012.

2

3
COMITZ | BEETHE

4

5
By: *Edward O. Comitz*

6
Edward O. Comitz
Patrick T. Stanley
6720 N. Scottsdale Road, Suite 150

7
Scottsdale, Arizona 85253
Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARIZONA DEPARTMENT OF INSURANCE
2910 North 44th Street, Suite 210
Phoenix, Arizona 85018-7269

CERTIFIED MAIL™

7006 1630 0003 4544 1637

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

Farmers New World Life Ins. Co.
Attn: Jeffrey Blackburn
3003 77th Ave SE
Mercer Island, WA 98040
CV2012-054951

Signed for 9/17/2012



COPY

SEP 12 2012

MICHAEL K. JEANES, CLERK
K. LEE
DEPUTY CLERK

1   Edward O. Comitz, #015006
    ecomitz@cobelaw.com
2   Patrick T. Stanley, #023835
    pstanley@cobelaw.com
3   **Comitz | Beethe**
    Scottsdale Spectrum
4   6720 N. Scottsdale Road, Suite 150
    Scottsdale, AZ 85253
5   Telephone 480.998.7800
    Fax: 480.219.5599
6
7   Attorneys for Plaintiff

8           IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9              IN AND FOR THE COUNTY OF MARICOPA

10
11  MARY M. MURPHY, individually and as       )   No.   CV2012-054951
    conservator for her minor children, W.M. and )
12  L.M.                                        )
                                                )
13              Plaintiff,                       )   **CERTIFICATE   REGARDING**
                                                )   **COMPULSORY ARBITRATION**
14  vs.                                         )
                                                )
15  FARMERS NEW WORLD LIFE INSURANCE            )
    COMPANY, a Washington corporation;          )
16                                              )
                Defendant.                      )
17                                              )
18  _____ )

19          The undersigned certifies that the largest award sought by the Plaintiff, including punitive

20  damages, but excluding interest, attorneys' fees, and costs, exceeds limits set by Local Rule for

21  compulsory arbitration.  This case is not subject to compulsory arbitration.

22          DATED this 12th day of September, 2012.

23                              COMITZ | BEETHE
24
25                              By:  _____
26                                   Edward O. Comitz
                                     Patrick T. Stanley
27                                   6720 N. Scottsdale Road, Suite 150
                                     Scottsdale, Arizona 85253
28                                   Attorneys for Plaintiff